**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2015 MSPB 13**

Docket No. NY-0752-13-0167-I-1

**Jose E. Rosario-Fabregas,**

**Appellant,**

**v.**

**Department of the Army,**

**Agency.**

February 13, 2015

Jose E. Rosario-Fabregas, San Juan, Puerto Rico, pro se.

Elizabeth Vavrica and John F. Kasbar, Jacksonville, Florida, for the
agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

The appellant filed a constructive suspension appeal, and the administrative
judge issued an initial decision finding that the appellant was constructively
suspended for a portion of the time claimed. The appellant has filed a petition for
review, and the agency has filed a cross-petition for review. For the reasons set
forth below, we DENY the petition for review, GRANT the cross-petition for
review, VACATE the initial decision, and DISMISS the appeal for lack of
jurisdiction.

BACKGROUND

¶2     On February 12, 2010, the agency removed the appellant for misconduct, and on November 30, 2011, the Board reversed the removal on due process grounds.  *Rosario-Fabregas v. Department of the Army*, MSPB Docket No. NY-0752-10-0127-I-1, Initial Appeal File (0127 IAF), Tab 4 at 23, 25-27 of 109, 4-10 of 107; *Rosario-Fabregas v. Department of the Army*, MSPB Docket No. NY-0752-10-0127-I-1, Nonprecedential Final Order (Nov. 30, 2011).  The agency restored the appellant to the employment rolls effective December 2, 2011. *Rosario-Fabregas v. Department of the Army*, MSPB Docket No. NY-0752-10-0127-C-1, Compliance File, Tab 6 at 7.  The appellant, however, did not return to duty.

¶3     On December 19, 2011, the appellant submitted a letter from his treating psychiatrist requesting to be excused from work until January 16, 2012 based on an "emotional condition."[1]  IAF, Tab 11, Ex. 1.  Through the following months, the appellant continued to request leave from work based on his condition, each time pushing back his expected return date, and the agency continued to approve the appellant's absences.  IAF, Tab 11, Ex. 2 at 20-21, Ex. 4 at 33,  Ex. 9, Ex. 11, Ex. 13 at 22, Ex. 15 at 28, Tab 11a, Ex. 31 at 68.  Then, on June 11, 2012, the appellant submitted a June 7, 2012 letter from his psychiatrist with the following recommendation for a part-time schedule:

> Having [the appellant] resume his position at work, gradually, starting on Monday, July 2, 2012.  To work a 20 to 30 hours a week schedule for a three weeks period minimum.  After this period, I

---

[1] The psychiatrist's note refers to code 296.23, which we infer is a reference to the Diagnostic and Statistical Manual of Mental Disorders.  *Rosario-Fabregas v. Department of the Army*, MSPB Docket No. NY-0752-13-0167-I-1, Initial Appeal File (IAF), Tab 11, Exhibit (Ex.) 1.  This code indicates a diagnosis of major depressive disorder, single episode, severe without psychosis. *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders*, Text Revision, 370 (4th ed. 2000).

> would like to evaluate [the appellant] again, to certify his capacity to move in, on a full time schedule.

IAF, Tab 11, Ex. 22, Ex. 23 at 43.

¶4      The agency determined that the appellant was requesting to be accommodated through a modified work schedule. It asked him to indicate the number of hours he was requesting to work per week, his proposed schedule, and whether he wished to take leave for the remaining hours or if he was seeking a change to a part-time schedule. IAF, Tab 11, Ex. 23. There is no evidence that the appellant sent the requested information. Instead, on June 25, 2012, he told the agency that he was going to return to work full time on July 2, 2012. IAF, Tab 11a, Ex. 24 at 46. The agency responded, noting that the appellant's psychiatrist had recommended that he return to work part time, and requesting additional information before returning the appellant to duty. *Id*., Ex. 25 at 49, Ex. 27, Ex. 29 at 63. The appellant did not return to work on July 2, 2012, and instead continued to request leave, claiming that the agency was preventing him from returning to duty. IAF, Tab 11a, Ex. 26 at 55, Exs. 28-29, Tab 14 at 30, 44. Through the following weeks, the appellant exchanged emails with the agency, and provided some additional documentation, but the agency maintained that the documentation was insufficient. IAF, Tab 11a, Exs. 27-32. He ultimately provided a report from his psychiatrist on July 25, 2012. IAF, Tab 14 at 30. The report indicated that the agency's requests for medical documentation had exacerbated the appellant's symptoms, he was unable to work, and his prognosis was "reserved," and recommended that he "consider applying for disability." IAF, Tab 11a, Ex. 30. The appellant requested leave beginning July 25, 2012, and the agency continued to approve the leave.[2] IAF, Tab 11a, Ex. 31 at 68, Tab 14 at 30, 45-47.

---

[2] It appears that all of the appellant's absences were approved at least until September 28, 2012. IAF, Tab 11a, Ex. 31 at 68. The record does not affirmatively

¶5      The appellant did not provide further medical documentation until November 14, 2012. On that date, he sent the agency a new report from his psychiatrist, giving a detailed assessment of the appellant's condition and recommending that he return to duty for 20 to 30 hours per week beginning November 19, 2012. IAF, Tab 11a, Ex. 33. However, on November 15, 2012, the agency proposed the appellant's removal on the same bases underlying the first removal, and it placed him on paid administrative leave.[3] *Id*., Ex. 34; MSPB Docket No. NY-0175-13-0142-I-2, Initial Appeal File (0142 IAF), Tab 4 at 24-34 of 113; 0127 IAF, Tab 4 at 4-10 of 107. The deciding official upheld the removal, which was effective February 8, 2013. 0142 IAF, Tab 4 at 4, 6-11 of 73. Thus, the appellant never returned to duty despite having been on the employment rolls for over a year after his original removal was reversed.

¶6      The appellant filed the instant appeal, contesting the agency's failure to return him to duty and raising numerous discrimination and reprisal claims. He did not request a hearing. IAF, Tab 1. The administrative judge advised the parties that the appellant appeared to be raising a constructive suspension claim and she notified the appellant of his jurisdictional burden. IAF, Tab 10. After receiving the parties' evidence and argument, the administrative judge issued an initial decision granting the appellant's requested relief in part. IAF, Tab 30, Initial Decision (ID) at 2, 17-19, 22, 28. There was a question of timeliness, but the administrative judge found good cause to waive the filing deadline. ID at 19-20. She found that the agency constructively suspended the appellant without due process from July 2, 2012, through November 17, 2012—the period

show whether the appellant's absences after that date were approved; however, neither party asserts that the agency declined to approve the appellant's absences during any of the time periods at issue in this appeal.

[3] The appellant filed a separate appeal of his second removal, which is currently pending in the regional office. *Rosario-Fabregas v. Department of the Army*, MSPB Docket No. NY-0752-13-0142-I-2.

beginning when the appellant first indicated that he could return to work part time and ending when the agency placed him on administrative leave.[4] ID at 17-19. She further found that the agency failed to provide the appellant with a reasonable accommodation during the time period. ID at 21-22. The administrative judge found that the appellant failed to prove any of his other discrimination and reprisal claims. ID at 22-28.

¶7 The appellant has filed a petition for review, arguing among other things that he was constructively suspended for the entire period claimed, beginning December 19, 2011, rather than July 2, 2012, Petition for Review (PFR) File, Tab 1 at 8-12, and that he proved his remaining discrimination and reprisal claims, *id*. at 5-7, 11-19. The agency has filed a response and cross-petition for review, arguing among other things that none of the appellant's absences constituted a constructive suspension, PFR File, Tab 3 at 8-19, that the appeal should be dismissed as untimely, *id*. at 22-23, and that the appellant failed to prove his discrimination and reprisal claims, *id*. at 23-26. The appellant has filed a response to the agency's cross-petition for review. PFR File, Tab 5.

## ANALYSIS

¶8 Although various fact patterns may give rise to an appealable constructive suspension, all constructive suspension claims are premised on the proposition that an absence that appears to be voluntary actually is not. To demonstrate that the absence was, in part, not voluntary, and is an actionable constructive suspension, an appellant must show that: (1) the employee lacked a meaningful choice in the matter; and (2) it was the agency's wrongful actions that deprived the employee of that choice. *Romero v. U.S. Postal Service*, 121 M.S.P.R. 606,

---

[4] The agency's letter notifying the appellant that he was to be placed on administrative leave is dated November 15, 2012, IAF, Tab 11a, Ex. 34; however, the administrative judge found that the administrative leave did not begin until November 18, 2012, ID at 15. Neither party disputes this finding.

¶ 8 (2014). Assuming that the jurisdictional requirements of 5 U.S.C. chapter 75 are otherwise met, proof of these two things is sufficient to establish Board jurisdiction. *Id*. This analysis extends to situations in which the agency prevented the appellant's return to work after an initially voluntary leave of absence. *Id.*, ¶¶ 8-9 & n.2.

The appellant's absence from December 19, 2011, through July 1, 2012, did not constitute a constructive suspension.

¶9     On review, the appellant argues that the agency constructively suspended him from December 19, 2011, through July 1, 2012, by consistently demanding adequate medical documentation to substantiate his continued absence and threatening to place him in an absence without leave status if he failed to comply. PFR File, Tab 1 at 8-12. He alleges that the agency's actions in this regard intimidated him and caused his psychological condition to deteriorate. *Id*. He argues that his absence during this time constituted a constructive suspension because it was both involuntary and precipitated by the agency's wrongful actions. *Id*. at 10; *see Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶ 8 (2013).

¶10     However, we agree with the administrative judge that the appellant's absence from December 19, 2011, through July 1, 2012, did not constitute a constructive suspension. ID at 16. It appears to be undisputed that the appellant's psychological condition precluded him from reporting to work during this time period, and thus, he lacked a meaningful choice in the matter. *See Bean*, 120 M.S.P.R. 397, ¶ 13. Nevertheless, we find that the appellant's psychological condition was not caused by any improper agency actions. An agency is entitled to require medical documentation from its employees to substantiate sick leave requests in excess of 3 workdays, and such documentation generally must be provided within 15 days after the agency requests it. 5 C.F.R. § 630.405(a)-(b); *see Equal Employment Opportunity Commission, Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA)*, Notice 915.002, Questions 15-16

(July 27, 2000) (Enforcement Guidance); *see also* IAF, Tab 11, Ex. 2 at 18, 20-21, Ex. 6 at 39-40, Ex. 7 at 42, Exs. 8, 10, 18 (reflecting the appellant's requests for sick leave during this period and the agency's requirement that he submit substantiating medical documentation). Indeed, the agency in this case has promulgated its own procedures requiring such documentation. IAF, Tab 11a, Ex. 36 at 20-21. Thus, the agency was fully within its rights to require that the appellant substantiate his lengthy medical absence with documentation from his treating psychiatrist.

¶11    We have reviewed the agency's correspondence with the appellant during this time period, and we find nothing about it threatening, coercive, abusive, or otherwise improper. IAF, Tab 11, Exs. 2, 4, 6-8, 10-12, 14-19, 21, 23, Tab 11a, Exs. 25-26. Even if the appellant's psychological condition was exacerbated by the agency requiring him to comply with its lawful leave procedures, this does not mean that the agency acted improperly by requiring him to do so. Nor do we construe the agency's warnings of the consequences for failure to provide adequate medical documentation as improper threats. Rather, the agency would have been remiss not to provide the appellant with such warnings. *See Allen v. U.S. Postal Service*, 88 M.S.P.R. 491, ¶ 10 (2001) (an agency may not discipline an employee for failure to follow leave requesting procedures or for unscheduled leave unless he is on notice of the applicable requirements and that discipline for continued noncompliance is likely). Because the appellant has not shown that his absence from December 19, 2011, through July 1, 2012, was precipitated by any improper agency action, we find that he has not established jurisdiction over his constructive suspension appeal for that period of time. *See Romero*, 121 M.S.P.R. 606, ¶ 9; *see also Bean*, 120 M.S.P.R. 397, ¶ 8.

The appellant's absence from July 2, 2012, through November 17, 2012, did not constitute a constructive suspension.

¶12    On review, the agency argues that it was justified in preventing the appellant from returning to work on July 2, 2012, either in a full-time or

part-time capacity. It argues that the appellant failed to provide medical documentation releasing him for full duty and also failed to provide any information on how he wished to structure a part-time schedule. PFR File, Tab 3 at 8-18. We agree.

¶13    As explained above, on June 7, 2012, the appellant's psychiatrist recommended that he resume working 20 to 30 hours per week beginning July 2, 2012. IAF, Tab 11, Ex. 22. The agency determined that the appellant was making a request for reasonable accommodation under the Americans with Disabilities Act Amendments Act (ADAAA), and it followed up with him promptly, requesting more information in order to make a decision on the request.[5] *Id*., Ex. 23; *see* 42 U.S.C. § 12111(9)(B) (a modified or part-time work schedule is a type of reasonable accommodation); *see also* 29 C.F.R. § 1630.2(o)(2)(ii) (same). The requested information included the number of hours that the appellant wished to work per week, a proposed schedule, and how to account for the remaining unworked hours. IAF, Tab 11, Ex. 23. We find that the agency's request was entirely reasonable and is the sort of exchange that is supposed to occur during the interactive process. *See* 29 C.F.R. § 1630.2(o)(3) (indicating that it may be necessary for an agency to initiate a discussion with the employee regarding potential reasonable accommodations). However, the appellant failed to respond to the agency's request. Instead, he waited until a week before his expected return date and informed the agency that no accommodation was necessary because he would be returning to work full time.

---

[5] As a federal employee, the appellant's claim of discrimination on the basis of disability arises under the Rehabilitation Act of 1973. However, the regulatory standards for the Americans with Disabilities Act have been incorporated by reference into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation. *Sanders v. Social Security Administration,* 114 M.S.P.R. 487, ¶ 16 (2010) (citing 29 U.S.C. § 791(f) and 29 C.F.R. § 1614.203(b)).

IAF, Tab 11a, Ex. 24 at 46. This was contrary to the psychiatrist's recommendation that the appellant return to duty on a part-time basis. IAF, Tab 11, Ex. 22. The agency followed up the next day, summarizing the June 7, 2012 psychiatrist's note and directing the appellant to submit medical documentation that would clarify his prognosis and permit his return to work. IAF, Tab 11a, Ex. 25 at 49. The agency's request was consistent with its leave procedures, which required medical certification as a prerequisite for a return to duty following an absence for which medical certification was required. *Id.*, Ex. 36 at 21. The appellant failed to satisfy this requirement despite the agency's clear and repeated instructions. IAF, Tab 11, Ex. 11, Ex. 14 at 25, Exs. 16-17, 19, Tab 11a, Exs. 24-25, 27-29.

¶14     We also find that the agency's request for medical information was permissible under the ADAAA. *See Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶¶ 28-35 (2014). Under the ADAAA, an agency may only make a medical inquiry regarding whether an employee "is an individual with a disability or as to the nature or severity of the disability," where such an inquiry "is shown to be job-related and consistent with business necessity." *Id.*, ¶ 29 (quoting 42 U.S.C. § 12112(d)(4)(A)). Generally, a disability-related inquiry or medical examination may be job-related and consistent with business necessity if an employer has a reasonable belief, based on objective evidence, that: (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a direct threat due to a medical condition. *Id.*, ¶ 30. A direct threat is a "significant risk of substantial harm to the health of safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r). We find that the agency was justified, under both of these theories, to require further medical documentation from the appellant before returning him to duty.

¶15     Regarding the appellant's ability to perform his essential job functions, we find that the June 7, 2012 letter from his psychiatrist stating that the appellant

should return to work part time, when read together with the appellant's prior medical documentation, was sufficient to form the basis for a reasonable belief that the appellant's condition would preclude him from performing the essential functions of his position, even on a part-time basis. IAF, Tab 11, Ex. 22, Tab 11a, Ex. 30; *see Archerda*, 121 M.S.P.R. 314, ¶¶ 32-34. At the time that the agency received the letter, the appellant had been absent for medical reasons for approximately 7 months. A month prior to providing the agency with the June 7, 2012 letter, the appellant provided the agency with another letter from the same psychiatrist, reflecting that his conditions were "not resolving," and contemplating treatment options, including "Partial Hospitalization" and "[r]elocation [to] a working area where the [appellant] does not feel threatened after the bad experience he lived through." IAF, Tab 11, Exs. 20-21.

¶16     The June 7, 2012 letter did not certify that the appellant was able to work part time, but rather stated that allowing him to work part time was "encourage[d]," subject to reevaluation to determine if he could move on to a full-time schedule. *Id.*, Ex. 22. No specific recommendation was provided. Rather, the psychiatrist suggested that the appellant work 20 to 30 hours per week "for a three weeks period minimum." *Id.* In light of these facts, we agree with the agency that it was appropriate to gather more information before making a final determination on the appellant's ability to perform the essential functions of his position with or without reasonable accommodation, or alternatively, on how to tailor any accommodation that might be required to allow him to perform those functions. Accordingly, we find that the agency's disability-related inquiry was job-related and consistent with business necessity. *See Topping v. Rumsfeld*, EEOC Appeal Nos. 01991520 & 01991900, 2002 WL 31230849 at *4 (E.E.O.C. Sept. 30, 2002) (finding the decision to conduct a fitness for duty examination was appropriate where the medical information from the employee's own doctors

was insufficient for the agency to make a determination of whether she was able to perform the essential functions of her position).[6]

¶17        Regarding any direct threat that the appellant might have posed upon his return to the workplace, less than 5 months earlier, on January 25, 2012, the appellant submitted a psychiatrist's note stating that that the appellant had experienced "aggressive episodes." IAF, Tab 11, Exs. 9, 12. We find that this information was sufficient to form the basis for a reasonable belief that the appellant would pose a direct threat if he returned. We make no finding on whether the appellant actually posed such a threat because that would require us to make an individualized assessment of his "present ability to safely perform the essential functions" of his position, including the duration of the risk, the nature and severity of the potential harm, the likelihood that the potential harm would occur, and the imminence of the potential harm. *See* 29 C.F.R. § 1630.2(r); *see also Complainant v. Donahoe*, EEOC Appeal No. 0120120665, 2014 WL 7005985 at *6 (E.E.O.C. Dec. 4, 2014) (discussing the documentation on which an agency may rely in applying this test). The record is insufficiently developed for us to make such a determination, and it likewise appears that the agency had insufficient information before it to make such a determination. The agency was therefore entitled to seek additional information to address the direct threat issue before deciding whether to return the appellant to the workplace.[7] *See Norton v. Nicholson*, Appeal No. 01A51018, 2006 WL 522288 at *4 (E.E.O.C. Feb. 21,

---

[6] The Board generally defers to the Equal Employment Opportunity Commission (EEOC) on issues of substantive discrimination law unless the EEOC's decision rests on civil service law for its support or is so unreasonable that it amounts to a violation of civil service law. *Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶ 20 (2013).

[7] Although the appellant's psychiatrist informed the agency on March 16, 2012, that there had "been no aggressive episodes during this . . . past year," IAF, Tab 11, Ex. 13 at 21, the psychiatrist still failed to describe the nature of any past episodes or the likelihood of their recurrence.

2006) (finding that management reasonably concluded from doctors notes provided by the employee that more information was required to determine if the employee posed a direct threat); Enforcement Guidance, Question 17, Example B (indicating that an employer may request additional medical documentation when an employee with a psychiatric condition threatens several coworkers, is hospitalized for 6 weeks, and returns to work with a doctor's note that indicates only that he was "cleared to return to work"). The agency's inquiry was job-related and consistent with business necessity. *See Norton*, 2006 WL 522288 at *4.

¶18 The administrative judge found that the agency failed to meet its burden to show that there was no reasonable accommodation that would either eliminate or reduce any direct threat that the appellant posed. ID at 19. She suggested that one such accommodation might have been telework. *Id*. We note, however, that the appellant did not respond to the agency's request for clarification regarding what it interpreted as his request for accommodation, did not request telework as an accommodation, and did not identify any vacant, funded position to which the agency might have reassigned him. *See White v. U.S. Postal Service*, 117 M.S.P.R. 244, ¶ 16 (2012) (setting forth the elements of a claim of failure to accommodate a disability); *see also Petitioner v. McDonald*, EEOC Petition No. 0320130052, 2014 WL 6853739 at *3 (E.E.O.C. Nov. 28, 2014) (the disabled individual generally has the obligation to request accommodation; an agency is not required to inquire in the first instance); IAF, Tab 11, Ex. 23 (containing the agency's inquiry regarding the appellant's reasonable accommodation request). Considering the appellant's failure to engage in the interactive process with respect to his request for part-time work and his failure to provide documentation from his psychiatrist releasing him for full-time work, we find that the agency did not act improperly in refusing to place the appellant back in a duty status. *See Romero*, 121 M.S.P.R. 606, ¶¶ 10-11. Thus, even assuming that the appellant is a qualified individual with a disability, his refusal to engage in the interactive

process prevented the agency from identifying a reasonable accommodation. *See Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶¶ 19-21 (2014) (finding an appellant frustrated the agency's reasonable accommodation efforts); *see also Moylett v. Donahoe*, Appeal No. 0120091735, 2012 WL 3059884 at \*11-\*12 (E.E.O.C. July 17, 2012) (finding that an employee was responsible for a breakdown in the interactive process because he did not respond to his agency's reasonable request for documentation regarding his disability and functional limitations).

¶19        The agency had the right to prevent the appellant from returning to work in the absence of proper medical documentation under its regulations.  IAF, Tab 11a, Ex. 36 at 21; *see Nowinski v. Potter*, EEOC Appeal No. 0120063215, 2007 WL 1094273, at \*3, \*5 (E.E.O.C. Mar. 27, 2007) (finding that an agency did not violate an employee's rights when it required him to clock out because he had not provided a properly requested return-to-work medical clearance); *see also Romero*, 121 M.S.P.R. 606, ¶¶ 9-11 (finding that the agency properly placed the appellant on enforced leave during the period that the appellant failed to identify any reasonable accommodation for his significant medical restrictions, which prevented him from performing his assigned duties).  The appellant's failure to provide this documentation was not the fault of the agency.[8]  Because the appellant failed to show that his absence during any of the time periods at issue was the result of the agency's improper actions, we find the Board lacks

---

[8] Eventually, on November 14, 2012, the appellant provided the agency medical documentation that appears to have been responsive to some of its informational requests (although not the request for information on how to structure the appellant's requested part-time work schedule).  IAF, Tab 11a, Ex. 33.  He requested to return to duty part time the following week.  *Id*.  Before the proposed return-to-duty date arrived, however, the agency placed the appellant on administrative leave, thus ending the period of any possible constructive suspension.  *Id*., Ex. 34; *see LaMell v. Armed Forces Retirement Home*, 104 M.S.P.R. 413, ¶ 9 (2007) (paid administrative leave is not a suspension).

jurisdiction over this appeal. *See Romero*, 121 M.S.P.R. 606, ¶ 9; *see also Bean*, 120 M.S.P.R. 397, ¶ 8.

The Board lacks jurisdiction over the appellant's discrimination and reprisal claims.

¶20      The appellant has raised numerous discrimination and reprisal claims in this appeal. PFR File, Tab 1 at 5-7, 11-19; ID at 20-28. The Board generally lacks jurisdiction over such claims in the absence of an otherwise appealable action.[9] *See Pridgen v. Office of Management and Budget*, 117 M.S.P.R. 665, ¶ 7 (2012); *see also Wein v. Department of the Navy*, 37 M.S.P.R. 379, 381 (1988). Although the Board will consider such claims to the extent that they bear on the jurisdictional issue in a constructive adverse action appeal, *Garcia v. Department of Homeland Security*, 437 F.3d 1322, 1341-43 (Fed. Cir. 2006), as discussed above, we find no basis to conclude that the alleged prohibited personnel practices in this case precipitated the appellant's absence. To the extent that the appellant is arguing that the agency prevented him from returning to work for reasons of discrimination or reprisal, for the reasons explained above,

---

[9] We do not separately adjudicate the appellant's claim of whistleblower reprisal here as an individual right of action appeal (IRA) because he did not demonstrate below, despite an order to do so, that he exhausted his administrative remedies with the Office of Special Counsel (OSC). *See* IAF, Tab 4 (advising the appellant that the Board lacked jurisdiction over an IRA appeal unless he exhausted his administrative remedies with OSC and ordering him to respond), Tab 6 at 5 (failing to reflect that the appellant filed a complaint with OSC, and asserting that the agency failed to advise him of this remedy); *see also Edwards v. Department of the Air Force*, 120 M.S.P.R. 307, ¶¶ 12, 15 (2013) (discussing an employee's election of a remedial process for pursuing whistleblower claims and noting the requirement of exhaustion with OSC for IRA appeals). Although the appellant alleged that the agency should have provided him with notice of his right to go to OSC, any such failure would not relieve the appellant of the requirement that he establish exhaustion of his whistleblower reprisal claim in an IRA appeal in the absence of Board jurisdiction over his alleged constructive suspension. IAF, Tab 6 at 5; *cf. Edwards*, 120 M.S.P.R. 307, ¶¶ 12-13 (reflecting that, in the absence of Board jurisdiction under chapter 75, an appellant would be required to establish jurisdiction over his whistleblower reprisal claim as an IRA appeal).

we find that the real reason was the appellant's failure to provide adequate documentation to allow it to do so. To the extent that the appellant is arguing that his initial leave of absence was caused by his removal without due process 2 years prior, we find that these circumstances would not compel a reasonable person in the appellant's situation to be absent from work after the removal was reversed. *See Swift v. U.S. Postal Service*, 61 M.S.P.R. 29, 32 (1994) (the Board applies the "reasonable person" standard in determining whether an action is involuntary based on coercion).

The appellant has not established that the administrative judge was biased.

¶21    Pointing to some of the administrative judge's factual findings as evidence, the appellant argues that she was biased. PFR File, Tab 1 at 4-5, 14. In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). We find that the appellant's allegations of bias do not meet this standard.

We do not reach the timeliness issue.

¶22    Although the appeal was untimely filed, the administrative judge found good cause to waive the deadline.[10] ID at 19-20; *see* 5 C.F.R. § 1201.22(c). The

---

[10] The appellant filed the instant appeal on April 8, 2014, which was well beyond the Board's regulatory filing deadline, even measuring from November 17, 2012—the last day of the alleged constructive suspension. IAF, Tab 1; *see* 5 C.F.R. § 1201.22(b)(1) (general 30-day time limit for filing a Board appeal); *cf. Dancy-Butler v. Department of the Treasury*, 80 M.S.P.R. 421, ¶ 4 (1998) (when an appellant alleges a constructive

agency challenges this finding on review. PFR File, Tab 3 at 22-23. Because we find that the Board lacks jurisdiction over this appeal, we decline to adjudicate the issue of whether the filing deadline should be waived. The issues of timeliness and jurisdiction are generally considered to be inextricably intertwined in a constructive suspension appeal because a failure to inform an employee of Board appeal rights may excuse an untimely filed appeal, and whether the agency was obligated to inform the employee of such appeal rights depends on whether the employee was affected by an appealable action. *Greek v. U.S. Postal Service*, 78 M.S.P.R. 470, 475-76 (1998). Because we determine that the Board lacks jurisdiction over the appellant's absence, we do not reach the issue of whether the filing deadline was properly waived. *See Edge v. U.S. Postal Service*, 113 M.S.P.R. 692, ¶ 12 (2010) (finding that it was improper for an administrative judge to dismiss an alleged constructive suspension appeal as untimely filed without first making jurisdictional findings).

## ORDER

¶23        This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

---

suspension, the time period for filing a Board appeal from the alleged adverse action begins to run when the appellant has been absent for more than 14 days as a result of the agency's alleged actions).

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court.  The Merit Systems

Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:

_____
William D. Spencer
Clerk of the Board
Washington, D.C.